The Honorable Robert S. Lasnik

1
2
3
4
5
6
7

8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10
11
12
13
14
15
16
17

TONDA FERRANDO and DEX MARZANO,
individually and on behalf of all others similarly
situated,

             *Plaintiffs*,

    v.

ZYNGA INC., a Delaware corporation.
            *Defendant*.

Case No. 22-cv-214-RSL

**UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT**
**AGREEMENT**

NOTE ON MOTION CALENDAR:

June 27, 2022

18
19
20
21
22
23
24
25
26
27

1

## TABLE OF CONTENTS

2

**INTRODUCTION** ...........................................................................................................1

3

**BACKGROUND** .............................................................................................................2

4

    **A.**   **Relevant Social Casino Litigation History (2015-Present)** ...............................2

5

        1.   Proposed Class Counsel's 2015 Social Casino Lawsuits ...............................2

6

        2.   The Ninth Circuit Reverses the *Kater* Dismissal in 2018 ............................2

7

        3.   Litigation Efforts in the Related Cases ........................................................3

8

        4.   Litigation-Adjacent Efforts in the Related Cases ...........................................4

9

        5.   Settlements in the Related Cases ................................................................4

10

    **B.**   **Plaintiffs' Allegations and the Subsequent Arms-Length Mediation** ...............5

11

**THE TERMS OF THE SETTLEMENT AGREEMENT** ..............................................6

12

    **A.**   **Settlement Class Definition** ...........................................................................6

13

    **B.**   **Monetary Benefits** ..........................................................................................7

14

    **C.**   **Prospective Relief** ..........................................................................................8

15

    **D.**   **Release** ............................................................................................................8

16

    **E.**   **Class Notice** ...................................................................................................8

17

    **F.**   **Incentive Award Requests** ............................................................................8

18

    **G.**   **Attorneys' Fees and Expenses Requests** .......................................................8

19

**ARGUMENT** ..................................................................................................................9

20

  **I.**   **The Proposed Class Should Be Certified.** ...........................................................9

21

    **A.**   **The Proposed Class Meets the Requirements of Rule 23.** .............................10

22

        1.   The Proposed Settlement Class Is Sufficiently Numerous. .........................10

23

        2.   Settlement Class Members Share Common Questions of Law
            and Fact. ...................................................................................................10

24

        3.   Plaintiffs' Claims are Typical of Settlement Class Members' Claims. ........12

25

        4.   The Class Representatives and Proposed Class Counsel Adequately
            Represent the Settlement Class. ................................................................12

26

    **B.**   **The Proposed Class Satisfies the Requirements of Rule 23(b)(3).** .................15

27

1      1.   Common Questions of Law and Fact Predominate. ..................................... 15

2      2.   A Class Action Is the Superior Method of Resolving the Controversy. ...... 16

3   **II. The Proposed Settlement Merits Preliminary Approval.** ............................................ 17

4    **A.**   **The Class Representatives and Proposed Class Counsel Have**

5      **Adequately Represented the Settlement Class.** .................................................. 19

6    **B.**   **The Settlement Was Reached as a Result of Arm's-Length Negotiations**

     **Between the Parties.** ............................................................................................. 19

7    **C.**   **The Settlement Treats Class Members Equitably.** ............................................ 21

8    **D.**   **The Relief Secured for the Settlement Class Is Adequate.** ............................. 22

9      1.   The Cost, Risk, and Delay of Further Litigation, Compared to the

10       Settlement's Benefits, Favor Approval. ....................................................... 23

11      2.   The Method of Processing Claims and Distributing Relief to the

      Settlement Class Members is Effective and Supports Preliminary

12       Approval. ................................................................................................................ 25

13      3.   The Terms of the Requested Attorneys' Fees are Reasonable. ................ 26

14   **III. The Court Should Approve the Proposed Notice Plan.** ............................................ 27

15   **CONCLUSION** ............................................................................................................................ 29

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 9, 10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2014) ......................................................................... 15

*Gen. Tel. Co. of the SW v. Falcon*,
    457 U.S. 147 (1982) ......................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................. 15, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................. 11, 13

**United States Circuit Court of Appeals Cases:**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ........................................................... 11

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ............................................................. 9

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ........................................................... 9

*Churchill Vill. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................... 18, 19, 22

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ......................................................... 18

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................... 13

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ......................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................... 11, 12, 13, 15

*In re Bluetooth Headset Prods. Liab.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................. 18, 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ....................................................................... 10

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................................... 19

*Kater v. Churchill Downs*,
    886 F.3d 784 (9th Cir. 2018) ....................................................................... 2, 3

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) ........................................................................ 18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................... 22, 23

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ....................................................................... 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................... 19, 24

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..................................................................... 15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................... 18

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................... 20

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................. 12, 17

**United States District Court Cases:**

*Ali v. Menzies Aviation, Inc.*,
    No. 16-cv-00262-RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ................. 10, 12

*Bennett v. SimplexGrinnell LP*,
    No. 11-cv-01854-JST, 2015 WL 1849543 (N.D. Cal. Apr. 22, 2015) ............................ 22

*Benson v. DoubleDown*,
    No. 18-cv-00525 (W.D. Wash. Apr. 9, 2018) ..................................................... 3

*Bess v. Ocwen Loan Servicing LLC*,
    334 F.R.D. 432 (W.D. Wash. 2020)................................................................16

*Betorina v. Randstad US, L.P.*,
    No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ...........23

*Dupee v. Playtika Santa Monica, et al.*,
    No. 15-cv-01021 (N.D. Ohio May 21, 2015) ...................................................2

*Geier v. m-Qube, Inc.*,
    No. 13-cv-354, 2016 WL 3458345 (W.D. Wash. June 24, 2016)......................9

*Gragg v. Orange CAB Co., Inc.*,
    No. 12-cv-0576-RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017)..............20

*Helde v. Knight Transportation, Inc.*,
    No. 12-cv-00904-RSL (W.D. Wash. May 24, 2017) .......................................20

*Ikuseghan v. Multicare Health Sys.*,
    No. 14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) .........19, 24

*In re Apple Inc. App Store Simulated Casino Style Games Litig.*,
    No. 21-md-2985-EJD (N.D. Cal. Sept. 23, 2021) .........................................5, 14

*In re Facebook Simulated Casino-Style Games Litig.*,
    No. 21-cv-2777-EJD (N.D. Cal. Sept. 23, 2021) ............................................14

*In re Google Play Store Simulated Casino-Style Games Litig.*,
    No. 21-md-3001-EJD (N.D. Cal. Sept. 23, 2021) ..........................................14

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020)............................................................22

*Jama v. GCA Services Group, Inc., et al.*,
    No. 16-cv-0331-RSL, 2017 WL 4758722 (W.D. Wash. Oct. 20, 2017)...................10, 14

*Kater v. Churchill Downs Inc.*,
    No. 15-cv-00612-RSL, 2015 WL 9839755 (W.D. Wash. Nov. 19, 2015).........................2

*Kater v. Churchill Downs Inc.*,
    No. 15-cv-00612-RSL, 2021 WL 511203 (W.D. Wash. Feb. 11, 2021) .............10, 14, 26

*Kater v. Churchill Downs Inc.*,
    No. 15-cv-00612-RSL (W.D. Wash. Apr. 17, 2015) ........................................2

*Kelley v. Microsoft Corp.*,
    251 F.R.D. 544 (W.D. Wash. 2008) ................................................................. 17

*Linehan v. AllianceOne Receivables Mgmt., Inc.*,
    No. 15-cv-1012-JCC, 2017 WL 3724819 (W.D. Wash. June 1, 2017) ...................... 25, 27

*Mason v. Mach. Zone, Inc.*,
    No. 15-cv-01107 (D. Md. Apr. 17, 2015) .......................................................... 2

*Phillips v. Double Down Interactive LLC*,
    No. 15-cv-04301 (N.D. Ill. Apr. 14, 2015) ......................................................... 2

*Reed v. Scientific Games Corp.*,
    No. 18-cv-00565 (W.D. Wash. Jan. 19, 2022) ................................................... 10

*Reed v. Scientific Games Corp.*,
    No. 18-cv-00565-RSL (W.D. Wash Apr. 17, 2018) ............................................. 3

*Reichert v. Keefe Commissary Network, LLC*,
    331 F.R.D. 541 (W.D. Wash. 2019) ............................................................ 15, 16

*Relente v. Viator, Inc.*,
    No. 12-cv-05868-JD, 2015 WL 2089178 (N.D. Cal. May 4, 2015) .......................... 17

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
    No. 14-cv-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ............... 18, 24, 25

*Ristic v. Mach. Zone, Inc.*,
    No. 15-cv-08996 (N.D. Ill. Oct. 9, 2015) ........................................................... 2

*Scott v. United Servs. Auto. Ass'n*,
    No. 11-cv-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) ..................... 20

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,
    No. 16-cv-1211-WBS-AC, 2019 WL 358517 (E.D. Cal. Jan. 29, 2019) .................... 17

*Tavenner v. Talon Grp.*,
    No. 09-cv-1370 RSL, 2012 WL 1022814 (W.D. Wash. Mar. 26, 2012) .................... 11

*Taylor v. Universal Auto Grp. I, Inc.*,
    No. 13-cv-5245-KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ................ 16, 17

*Wilson v. High 5*,
    No. 18-cv-05275 (W.D. Wash. Apr. 6, 2018) ..................................................... 3

PLS.' UNOPPOSED MOT. FOR PRELIM. APPROVAL
CASE NO. 22-CV-214-RSL

vii

EDELSON PC
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

*Wilson v. Huuuge, Inc.*,
    No. 18-cv-5276-RSL, 2021 WL 512229 (W.D. Wash. Feb. 11, 2021) ...............10, 14, 27

*Wilson v. Huuuge, Inc.*,
    No. 18-cv-5276-RSL (W.D. Wash. Apr. 6, 2018) .............................................................3

*Wilson v. Maxim Healthcare Servs., Inc.*,
    No. 14-cv-789-RSL, 2017 WL 2988289 (W.D. Wash. June 20, 2017) ............................18

*Wilson v. Playtika Ltd.*,
    No. 18-cv-5277-RSL, 2021 WL 512230 (W.D. Wash. Feb. 11, 2021) ...............10, 14, 27

*Wilson v. Playtika Ltd.*,
    No. 18-cv-5277-RSL (W.D. Wash. Apr. 6, 2018) .............................................................3

**Miscellaneous Authority:**

2 NEWBERG ON CLASS ACTIONS
    § 4:49 (5th ed.) ...............................................................................................................15

4 NEWBERG ON CLASS ACTIONS
    § 13:10 (5th ed.) .......................................................................................................17, 18

4 NEWBERG ON CLASS ACTIONS
    § 13:53 (5th ed.) .............................................................................................................25

5 NEWBERG ON CLASS ACTIONS
    § 15:83 (5th ed.) .............................................................................................................27

Fed. R. Civ. P. 23 ......................................................................................................*passim*

H.B. 2720,
    66th Leg., Reg. Sess. (Wash. 2020) ...............................................................................23

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS
    § 11:53 (4th ed. 2002).....................................................................................................29

MANUAL FOR COMPLEX LITIGATION (Fourth)
    § 21.633 (2004)................................................................................................................9

RCW § 4.24.070 ...............................................................................................................5

RCW § 19.86.010 .........................................................................................................5, 6

PLS.' UNOPPOSED MOT. FOR PRELIM. APPROVAL
CASE NO. 22-CV-214-RSL

viii

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

**INTRODUCTION**

This is the fifth settlement reached in a seven-year-old cluster of litigation in this District alleging that social casino apps constitute illegal gambling. It is the product of a full-day, in-person mediation before the Honorable Layn R. Phillips (Ret.) of Phillips ADR. The settlement provides for a non-reversionary, common-fund cash recovery of twelve million dollars ($12,000,000.00), equaling approximately twenty-five percent (25%) of the Class's alleged damages. That puts the settlement on par not only with *Reed v. Scientific Games* (No. 18-cv-565, preliminary approval granted January 19, 2022), but also with *Wilson v. Playtika* (No. 18-cv-5277, final approval granted February 11, 2021), in which Defendant Zynga's lead counsel here also served as a Playtika's lead counsel. In other words, while the Parties here were able to reach the proposed settlement without the need for motion practice, that is a direct result of seven years of litigation history before this Court and years of litigation with Defendant's counsel. Moreover, the excellent results delivered here equal those of the settlements reached in aggressively litigated cases.

If this settlement is approved, participating Class Members—just as in the *Reed v. Scientific Games* and *Wilson v. Playtika* settlements—stand to recover substantial portions of their alleged damages: between 20% (on the low end) to more than 60% (at the high end), based on Class Counsel's experience in those prior settlements. Particularly in the current economic climate, these recoveries will be life-changing for many Class Members. And the settlement further requires Zynga to implement meaningful prospective relief, including by maintaining and enforcing a self-exclusion policy. Because this settlement is fair, reasonable, and adequate, the Court should not hesitate to approve it.

Consequently, Plaintiffs respectfully request that the Court (i) certify the proposed Settlement Class; (ii) grant preliminary approval of the Settlement; (iii) appoint Tonda Ferrando and Dex Marzano as Class Representatives; (iv) appoint Jay Edelson, Rafey S. Balabanian, Todd Logan, Alexander G. Tievsky, Brandt Silver-Korn, and Amy B. Hausmann as Class Counsel; (v) approve the proposed Notice Plan; and (vi) schedule the final approval hearing.

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

1

**BACKGROUND**

**A.    Relevant Social Casino Litigation History (2015-Present)**

This case is part of a long-running series of lawsuits against social casino companies that began in 2015. Because the proposed settlement before the Court is ultimately the result of this now seven-year-long (and ongoing) effort, a brief history of the relevant social casino litigation landscape follows.

**1.    Proposed Class Counsel's 2015 Social Casino Lawsuits**

Between April and October of 2015, the undersigned counsel ("Proposed Class Counsel") filed five class action lawsuits against social casino companies, in four different courts across the country, alleging violations of state gambling laws. *See Kater v. Churchill Downs Inc.*, No. 15-cv-612 (W.D. Wash Apr. 17, 2015); *Dupee v. Playtika Santa Monica, et al.*, No. 15-cv-01021 (N.D. Ohio May 21, 2015); *Mason v. Mach. Zone, Inc.*, No. 15-cv-01107 (D. Md. Apr. 17, 2015); *Phillips v. Double Down Interactive LLC*, No. 15-cv-04301 (N.D. Ill. Apr. 14, 2015); *Ristic v. Mach. Zone, Inc.*, No. 15-cv-08996 (N.D. Ill. Oct. 9, 2015). The theory of liability in each case was similar: social casinos constitute illegal gambling and the companies purveying these games must return their ill-gotten gains to users. Each federal district court initially presented with this theory rejected it. *See, e.g., Kater v. Churchill Downs Inc.*, No. 15-cv-612, 2015 WL 9839755, at *4 (W.D. Wash. Nov. 19, 2015), *rev'd*, 886 F.3d 784 (9th Cir. 2018) (District Court concluded that "Big Fish Casino does not award something of value satisfying the requisite prize element, and therefore the game is not 'illegal gambling' under Washington law.").

**2.    The Ninth Circuit Reverses the *Kater* Dismissal in 2018**

In January 2016, Proposed Class Counsel appealed the dismissal order in *Kater*. *See Kater*, Dkt. #43. Two years later, after merits briefing and oral argument, the Ninth Circuit reversed:

> In this appeal, we consider whether the virtual game platform "Big Fish Casino" constitutes illegal gambling under Washington law. Defendant–Appellee Churchill Downs, the game's owner and

operator, has made millions of dollars off of Big Fish Casino. However, despite collecting millions in revenue, Churchill Downs, like Captain Renault in *Casablanca*, purports to be shocked—shocked!—to find that Big Fish Casino could constitute illegal gambling. We are not. We therefore reverse the district court and hold that because Big Fish Casino's virtual chips are a "thing of value," Big Fish Casino constitutes illegal gambling under Washington law.

*Kater*, 886 F.3d at 785. In that opinion, the Ninth Circuit rejected a variety of arguments that had been lodged by defendants claiming that social casinos are not gambling in Washington. For example, the Court rejected arguments that social casinos "do not extend gameplay, but only enhance it," *id.* at 787, and that the Washington State Gambling Commission had concluded that social casinos are not gambling, *id.* at 788.

### 3.    Litigation Efforts in the Related Cases

Soon after remand in *Kater*, in the spring of 2018, Proposed Class Counsel filed five additional class action lawsuits—*Fife v. Scientific Games*, *Wilson v. Playtika*, *Benson v. DoubleDown*, *Wilson v. High 5*, and *Wilson v. Huuuge*. Each alleged that a major social casino company's online slot machines constitute unlawful gambling under Washington's gambling laws. *See generally Scientific Games*, No. 18-cv-00565, Dkt. #1 (Apr. 17, 2018); *Playtika*, No. 18-cv-05277, Dkt. #1 (Apr. 6, 2018); *DoubleDown*, No. 18-cv-00525, Dkt. #1 (Apr. 9, 2018); *High 5*, No. 18-cv-05275, Dkt. #1 (Apr. 6, 2018); *Huuuge*, No. 18-cv-05276, Dkt. #1 (Apr. 6, 2018).

Over the next two years, Class Counsel fended off a barrage of motions and other litigation gambits aimed at dismissing or otherwise gutting the pending lawsuits. These included motions to dismiss for lack of personal jurisdiction (*Playtika*, Dkt. #40; *Kater*, Dkt. #202), motions to dismiss for lack of subject matter jurisdiction (*Scientific Games*, Dkt. #59; *DoubleDown*, Dkt. #138), motions to dismiss for failure to state a claim (*Playtika*, Dkt. #40; *Scientific Games*, Dkt. #28; *High 5*, Dkt. #34; *DoubleDown*, Dkt. #289), motions to certify questions to the Washington Supreme Court (*Playtika*, Dkt. #99; *High 5*, Dkt. #99; *DoubleDown*,

Dkt. #103), motions to compel arbitration (*Kater*, Dkt. #60; *Kater*, Dkt. #100; *Kater*, Dkt. #205; *Scientific Games*, Dkt. #82; *DoubleDown*, Dkt. #38; *Huuuge*, Dkt. #31), a motion to strike class claims (*DoubleDown*, Dkt. #128), interlocutory appeals of denials of motions to compel (*Scientific Games*, Dkt. #136; *DoubleDown*, Dkts. #82-83; *Huuuge*, Dkt. #47), and repeated efforts to have users click post-litigation pop-up arbitration clauses waiving their rights in these cases (*Kater*; *Scientific Games*; *DoubleDown*). Each of these gambits failed.

In the meantime, Proposed Class Counsel pursued offensive motion practice and discovery, ultimately prevailing in a slate of discovery disputes, *see, e.g.*, *Kater*, Dkt. #191; *DoubleDown*, Dkts. #366-367, obtaining data from defendants and third-party platforms Apple, Google, Facebook, and Amazon, *see, e.g.*, *Kater*, Dkt. #250; *DoubleDown*, Dkts. #366-367; *High 5*, Dkt. #129, and certifying a class, *see High 5*, Dkt. #170.

4.   Litigation-Adjacent Efforts in the Related Cases

Beyond the traditional litigation work necessitated by these cases, Proposed Class Counsel undertook (and continue to undertake) all manner of litigation-adjacent work to ward off various social casino company defendants' efforts to dispose of these lawsuits. These efforts include (i) opposing a "Petition for Declaratory Order" before the Washington State Gambling Commission, which asked the gambling commission to declare that social casinos "do not constitute gambling within the meaning of the Washington Gambling Act, RCW 9.46.0237," (ii) opposing legislation meant to defang Washington's gambling laws, including by providing in-person testimony and meeting with State Senators and Representatives and other officials, and (iii) sounding the alarm on social casinos to the general public by helping clients share their stories with media outlets across the country, such as PBS NewsHour and NBC News. *See* Declaration of Todd Logan ("Logan Decl.") ¶¶ 3-7.

5.   Settlements in the Related Cases

As a result of these efforts, between 2020 and 2021, Proposed Class Counsel achieved landmark settlements in four of the pending cases: *Kater v. Big Fish* ($155 million), *Wilson v. Playtika* ($37 million), *Reed v. Scientific Games* ($24.5 million), and *Wilson v. Huuuge* ($6.5

million). *See Kater*, Dkt. #289 (granting final approval); *Playtika*, Dkt. #164 (granting final

approval); *Scientific Games*, Dkt. #166 (granting preliminary approval); *Huuuge*, Dkt. #140

(granting final approval). These are the first ever class action settlements resolving claims that

social casinos constitute unlawful gambling, and undoubtedly served as catalysts for a

nationwide wave of dozens of cases related to social casinos, culminating in the creation of

multi-district litigation in the Northern District of California, in which Proposed Class Counsel

here have been appointed by Judge Davila as Interim Lead Counsel (Rafey S. Balabanian) and

Law and Briefing Counsel (Todd Logan). *See, e.g.*, *In re: Apple Inc. App Store Simulated

Casino-Style Games Litig.*, No. 5:21-md-2985-EJD, Dkt. #68 (N.D. Cal. Sept. 23, 2021).

**B.    Plaintiffs' Allegations and the Subsequent Arms-Length Mediation**

On February 24, 2022, Plaintiffs filed this case alleging that Defendant's social casinos,

including "Hit It Rich!," "Black Diamond Casino," "Wizard of Oz Slots," "Game of Thrones

Slots," and "Willy Wonka Slots" (individually, "Application," and together, the "Applications"),

constitute unlawful gambling under Washington's gambling laws. *See* Dkt. #1. Plaintiffs claimed

that the "social casino" business model, which drives players to pay real money for virtual casino

chips, is illegal under Washington law because its products are online gambling games of

chance. *See id.* ¶¶ 30, 45. More specifically, Plaintiffs alleged that the Applications entice users

with an initial allotment of free coins and/or chips to wager on an array of Vegas-style slots, *see

id.* ¶ 9, the outcomes of which are "dependent entirely upon chance," *id.* ¶ 37. They alleged that

these initial free chips are "quickly los[t]" in the course of gameplay, *id.* ¶ 10, and that—once

exhausted—users purchase more chips with real money (in packages ranging from $2.99 to

$99.99 each) if they wish to extend gameplay, *id.* ¶ 11.

Because these virtual chips "extend gameplay," *id.* ¶ 30, Plaintiffs alleged that these

virtual chips are "things of value" under Washington's gambling laws, and that under RCW

§ 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), users are entitled to

recoup their losses, *see id.* ¶¶ 25-38. Plaintiffs further alleged that these actions constituted

1   violations of RCW § 19.86.010 (the "Washington Consumer Protection Act" or "CPA"), *see id.*

2   ¶¶ 39-49, and common law unjust enrichment, *see id.* ¶¶ 50-54.

3         Around the time the Complaint was filed, and in clear view of the litigation landscape

4   outlined in Section A above, the Parties—notably, with Defendant represented by the same lead

5   counsel that represented Playtika in *Wilson v. Playtika*—agreed to mediate on May 4, 2022,

6   before the Honorable Layn R. Phillips (Ret.) and Niki Mendoza of Phillips ADR. Logan Decl.

7   ¶ 8. In the lead-up to the mediation date, the Parties were in frequent communication with each

8   other and with the Phillips ADR team, and their correspondence included the exchange of a

9   significant volume of informal discovery and dozens of pages of mediation briefing, in an effort

10  to narrow their disputes and finalize a framework for resolution. *Id.* ¶ 9. The Parties

11  supplemented the briefing with frequent telephonic correspondence clarifying the relevant facts

12  and honing Parties' negotiation positions. *Id.*

13        On May 4, 2022, the Parties engaged in a full-day, in-person mediation session with

14  Judge Phillips and Niki Mendoza of Phillips ADR. *Id.* ¶ 10. After a full day of arms-length

15  negotiations, the Parties reached an agreement in principle as to an appropriate settlement

16  amount and executed a term sheet. *Id.* But the negotiations didn't end there: over the next several

17  weeks, the Parties worked out the details of a final and binding class action settlement

18  agreement, exchanged drafts of a settlement agreement and supporting exhibits, met and

19  conferred telephonically to iron out disputes, and vetted and engaged a proposed settlement

20  administrator. *Id.* ¶ 11. On June 27, 2022, the Parties completed execution of the Settlement

21  Agreement now before the Court. *Id.* ¶ 12; *id.* ¶ 27, Ex. 1 (Class Action Settlement Agreement).

22                    **THE TERMS OF THE SETTLEMENT AGREEMENT**

23        For the Court's convenience, the key terms of the Agreement are summarized below.

24        **A.    Settlement Class Definition:** The Settlement Class is defined as follows: "all

25  individuals who, in Washington (as reasonably determined by billing address information, IP

26

27

1  address information, or other information furnished by Platform Providers), played the

2  Applications on or before Preliminary Approval of the Settlement."[1] Agreement § 1.33.

3      **B.**    **Monetary Benefits:** Defendant has agreed to establish a non-reversionary twelve-

4  million dollars ($12,000,000.00) Settlement Fund from which Settlement Class Members who

5  file a valid claim will be entitled to recover a cash payment, after deduction of costs and

6  administrative expenses, any fee award to Proposed Class Counsel, and any incentive payments

7  to the Class Representatives. *See id.* § 1.35. No portion of the Settlement Fund will revert to the

8  Defendant. *Id.* § 2.1(i). Any Settlement Class Member checks not cashed within ninety (90) days

9  of issuance will either be placed in a second distribution fund or donated to the Legal Foundation

10  of Washington, as approved by the Court. *Id.* § 2.1(h)*.* As described in detail in the Plan of

11  Allocation, the amount of each Settlement Class Member's payment will vary based on the

12  Settlement Class Member's Lifetime Spending Amount (those with higher Lifetime Spending

13  Amounts are eligible to recover a greater percentage) and overall Settlement Class Member

14  participation levels, *see id.* §§ 1.36, 2.1(c), except that no Class Member will recover more than

15  their Lifetime Spending Amount unless all Class members do, *see* Exhibit E to the Settlement

16  Agreement. Based on their experience with settlements in related cases, Plaintiffs' Counsel

17  anticipate that participating Settlement Class Members in the highest category of Lifetime

18  Spending Amounts will likely recover gross payments in excess of 60% of their Lifetime

19  Spending Amounts, and that participating Class Members in the smallest category of Lifetime

20  Spending Amounts will likely recover gross payments in excess of 20% of their Lifetime

21  Spending Amounts. *See* Logan Decl. ¶ 13. Settlement Class Members will be able to quickly and

22  easily estimate the amount of their potential recovery on the Settlement Website. *See* Agreement

23  § 4.2(d).

24  ---

25  [1]    Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families, (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors,

26  and any entity in which the Defendant or its parent has a controlling interest and their current or former officers, directors, and employees, (3) persons who properly execute and file a timely request for exclusion from the

27  Settlement Class, and (4) the legal representatives, successors or assigns of any such excluded persons. Agreement § 1.33.

PLS.' UNOPPOSED MOT. FOR PRELIM. APPROVAL      7      **EDELSON PC**
CASE NO. 22-CV-214-RSL      350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

**C.      Prospective Relief:** Defendant has agreed to maintain a voluntary self-exclusion policy and a webpage, accessible from within the Applications that encourages responsible gameplay. *See id.* § 2.2. Specifically, Defendant has agreed to publish on its website a method for players to restrict or prohibit their ability to purchase virtual coins, suspend their accounts, or close their accounts entirely. *Id.* Defendant has further agreed to enforce this policy through the use of Player IDs and other device or account-related identifiers.

**D.      Release:** In exchange for the relief described above, Defendant and other entities, including the Platform Providers Amazon, Apple, Facebook, Microsoft, Samsung, and Google, will be released from all claims raised in cases relating to the operation of Defendant's social casino games and the sale of virtual chips in those games, including claims that the games were illegal gambling or the chips were "things of value." The full release is contained at *id.* §§ 1.28, 3.1-3.4.

**E.      Class Notice:** The Settlement Fund will be used to pay the costs of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. *See id.* § 1.35. JND Legal Administration ("JND"), the Settlement Administrator, will send class notices via email and/or U.S. Mail based on records produced by Defendant and obtained from third parties. *Id.* §§ 4.1, 4.2. JND will also establish a settlement website and implement a digital publication notice campaign targeting Class Members. *Id.* In line with Rule 23, the notice will include the nature of the action, a summary of the settlement terms, and instructions on how to object or opt out of the settlement, including relevant deadlines. *Id.* § 4.3.

**F.      Incentive Award Requests:** With no consideration having been given or received, Tonda Ferrando and Dex Marzano will each seek an incentive award of no more than $5,000. *See id.* § 8.3. Defendant explicitly reserves its right to challenge any incentive award petitions. *See id.*

**G.      Attorneys' Fees and Expenses Requests:** The Parties have agreed that Proposed Class Counsel are entitled to an award of reasonable attorneys' fees and expenses in an amount

1  to be determined by the Court and to be paid from the Settlement Fund. *See id.* § 8.1. Without

2  the Parties having discussed the issue of attorneys' fees at any point in their negotiations, and

3  with no consideration given or received, Proposed Class Counsel have unilaterally agreed to

4  limit any petition for attorneys' fees to no more than 30% of the Settlement Fund, plus

5  reimbursement of expenses. *Id.* Any fee award requested by Proposed Class Counsel will be

6  subject to the Court's approval. *Id.* Defendant may challenge the amount requested. *Id.*

7                                           **ARGUMENT**

8  **I.    The Proposed Class Should Be Certified.**

9         Before granting preliminary approval, the Court must first determine that the proposed

10  class is appropriate for certification. To do so, the proposed class must meet the requirements of

11  Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521

12  U.S. 591, 614, 621 (1997); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.

13  2010); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.633 (2004).[2]

14         Rule 23(a) requires that a plaintiff demonstrate that (1) the proposed class is so numerous

15  that joinder of all individual class members is impracticable (numerosity), (2) there are questions

16  of law or fact common to the proposed class (commonality), (3) the claims of the plaintiff are

17  typical of those of the class (typicality), and (4) the plaintiff will adequately protect the interests

18  of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, Plaintiffs seek

19  certification under Rule 23(b)(3), Plaintiffs must also demonstrate that common questions

20  predominate over any questions affecting only individual members (predominance), and that a

21  class action is superior to other available methods for fairly and efficiently adjudicating the

22  controversy (superiority). Fed. R. Civ. P. 23(b)(3). Because the proposed Class is being certified

23

24  ───────────────
   [2]      Courts sometimes also inquire into whether the proposed class is "ascertainable," that is, "whether the
25  Court can reasonably identify which individuals are class members and which are not." *Geier v. m-Qube, Inc.*, No.
   13-cv-354, 2016 WL 3458345, at *2 (W.D. Wash. June 24, 2016). But in this Circuit there is no separate
26  "administrative feasibility" or "ascertainability" requirement implicit in Rule 23. *Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121, 1123 (9th Cir. 2017) ("[S]eparate administrative feasibility prerequisite to class certification is not
27  compatible with the language of Rule 23."). Nevertheless, membership in the proposed Class here is based on
   objective, ascertainable criteria: whether a person has previously played an at-issue Application in Washington.

1  for settlement purposes, the Court "need not inquire whether the case, if tried, would present

2  intractable management problems." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557

3  (9th Cir. 2019) (quoting *Amchem*, 521 U.S. at 620).

4        **A.     The Proposed Class Meets the Requirements of Rule 23.**

5        Like the four substantially similar social casino class action settlements approved by this

6  Court, the proposed Settlement here satisfies all elements of Rule 23. *See Wilson v. Huuuge, Inc.*,

7  No. 18-cv-5276-RSL, 2021 WL 512229, at *1 (W.D. Wash. Feb. 11, 2021) (finding that a

8  similar social casino class action met all the prerequisites of Rule 23); *Wilson v. Playtika Ltd.*,

9  No. 18-cv-5277-RSL, 2021 WL 512230, at *1 (W.D. Wash. Feb. 11, 2021) (same); *Kater v.*

10  *Churchill Downs Inc.*, No. 15-cv-00612-RSL, 2021 WL 511203, at *1 (W.D. Wash. Feb. 11,

11  2021) (same); *Reed v. Scientific Games Corp.*, No. 18-cv-00565, Dkt. #166 at 1 (W.D. Wash.

12  Jan. 19, 2022) (same).

13        1.     The Proposed Settlement Class Is Sufficiently Numerous.

14        The first prerequisite to class certification under Rule 23(a)—numerosity—requires that

15  the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

16  There is no specific minimum number of proposed class members required to satisfy the

17  numerosity requirement, but generally a class of forty or more members is considered sufficient.

18  *Ali v. Menzies Aviation, Inc*., No. 16-cv-00262-RSL, 2016 WL 4611542, at *1 (W.D. Wash.

19  Sept. 6, 2016); *see Jama v. GCA Services Group, Inc., et al.*, No. 16-cv-0331-RSL, 2017 WL

20  4758722, at *3 (W.D. Wash. Oct. 20, 2017) (numerosity satisfied by class of 93 class members).

21        Here, the Settlement Class undoubtedly exceeds one thousand individuals. *See* Logan

22  Decl. ¶ 14. Consequently, the proposed Class is so numerous that joinder of their claims is

23  impracticable, and the numerosity requirement is satisfied.

24        2.     Settlement Class Members Share Common Questions of Law and Fact.

25        The second requirement of Rule 23(a)—commonality—is satisfied where "there are

26  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is

27  construed permissively and is demonstrated when the claims of all class members "depend upon

PLS.' UNOPPOSED MOT. FOR PRELIM. APPROVAL      10      **EDELSON PC**
CASE NO. 22-cv-214-RSL      350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

1   a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc.*

2   *v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*,

3   150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

4   predicates is sufficient, as is a common core of salient facts coupled with disparate legal

5   remedies within the class."). The common contention must be of such a nature that it is capable

6   of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue

7   that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

8   Moreover, "[where] the circumstances of each particular class member vary but retain a common

9   core of factual legal issues with the rest of the class, commonality exists," *Parra v. Bashas', Inc.*,

10  536 F.3d 975, 978–79 (9th Cir. 2008), and "[i]t is not necessary that members of the proposed

11  class share every fact in common," *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030

12  (9th Cir. 2012) (internal quotations omitted). Indeed, "the theoretical possibility of individual

13  issues is not enough to outweigh the benefits of common resolution of classwide issues."

14  *Tavenner v. Talon Grp.*, No. 09-cv-1370 RSL, 2012 WL 1022814, at *4 (W.D. Wash. Mar. 26,

15  2012).

16          This case presents numerous common questions. For example: are the virtual chips in

17  Defendant's Applications "things of value"? If so, are the Applications "gambling games" under

18  Washington law? If so, are Class Members entitled to recover their losses under the RMLGA?

19  Does the legislative declaration of purpose in RCW § 9.46.010 render Defendant's alleged

20  violations of gambling laws unfair practices under the Washington CPA? If so, are proposed

21  Class Members entitled to pursue an injunction? How about treble damages?

22          These common questions—whose answers depend solely on Defendant's common course

23  of conduct—establish commonality. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th

24  Cir. 2013) (noting key inquiry is "whether class treatment will generate common answers apt to

25  drive the resolution of the litigation") (internal quotations omitted). At the heart of this case is

26  Plaintiffs' allegation that the Applications are illegal gambling. This litigation, if tried to a

27  verdict, would resolve all claims stemming from that allegation in a single stroke. Rule 23(a)'s

commonality requirement is therefore satisfied.

                3.      <u>Plaintiffs' Claims are Typical of Settlement Class Members' Claims.</u>

Rule 23(a)'s next requirement—typicality—requires that the class representatives' claims be typical of those of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Id.*; *see also Ali*, 2016 WL 4611542, at *2 (W.D. Wash. Sept. 6, 2016). This is a "permissive" standard and it is met where the class representative's claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. At bottom, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Ali*, 2016 WL 4611542, at *2 (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156 (1982)) (internal quotations omitted).

Typicality is met here. While the Class Representatives each have different total damages, each possesses legal claims identical to those possessed by all members of the proposed Class: that the Applications are illegal gambling games, and consequently that their in-game losses must be returned to them. In other words, each suffered the same injury as every other Class Member harmed by her/his use of the allegedly illegal Applications. Accordingly, each has the same interest as every other Class Member in obtaining all available relief for these alleged violations. The typicality requirement is satisfied.

                4.      <u>The Class Representatives and Proposed Class Counsel Adequately Represent the Settlement Class.</u>

Rule 23(a)'s final requirement—adequacy—requires that the proposed class representatives have protected and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interest of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class).

Here, Plaintiffs meet the requirements to be appointed Class Representatives. First, as discussed above, they share the same interest in securing relief for the claims at issue as every other member of the proposed Settlement Class, and there is no evidence of any conflict of interest. Both Plaintiff Ferrando and Plaintiff Marzano have demonstrated their willingness to prosecute this case, including by providing their counsel with relevant information and documents, reviewing case documents, and remaining in communication with Proposed Class Counsel regarding the litigation and settlement. *See* Logan Decl. ¶ 15. Plaintiffs, as Class Representatives, will fairly and adequately protect the Settlement Class's interest.

Similarly, the appropriateness of appointing Plaintiffs' Counsel from Edelson PC as Class Counsel is apparent. The Court must only ask whether Proposed Class Counsel are unencumbered by conflicts of interest and will vigorously prosecute the action. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Proposed Class Counsel meet both requirements here.

First, the record discloses no conflicts of interest and Counsel are aware of none. *See* Logan Decl. ¶ 16. Proposed Class Counsel have no financial stake in the Defendant, nor do they have any connections to Class Members that might cause them to privilege certain Class Members over others. *See id.*

Second, Proposed Class Counsel's commitment to vigorously prosecuting this case and protecting the interests of the proposed Class is indisputable. The underlying legal theory of this

action and other social casino cases was developed by Edelson PC and first raised in related cases more than seven years ago also by Edelson PC. *See id.* ¶ 17. Over the years, Edelson PC has represented the interests of the proposed Class not just in the specific bounds of this case docket but also in proceedings before the WSGC and before the Washington Legislature. *See id.* ¶¶ 3-6, 18. The Court appointed Edelson PC as Class Counsel in four substantially similar class action settlements, leading to approximately $225 million in gross settlements returned to class members. *See Huuuge*, 2021 WL 512229, at *1; *Playtika*, 2021 WL 512230, at *1; *Kater*, 2021 WL 511203, at *1; *Scientific Games*, Dkt. #166 at 2.

More broadly, Proposed Class Counsel are well-qualified and experienced members of the plaintiffs' bar, have the resources necessary to conduct litigation of this nature, and are frequently appointed lead class counsel in major litigation across courts nationwide. *See* Logan Decl. ¶ 19. For example, in the Northern District of California, the Hon. Edward John Davila recently appointed Rafey Balabanian as Interim Lead Counsel and Todd Logan as Law and Briefing Counsel in three MDLs[3] alleging that Apple, Google, and Facebook violate state and federal gambling laws by, *inter alia*, promoting and profiting off of social casinos. *See In re Apple Inc. App Store Simulated Casino Style Games Litig.*, No. 21-md-2985-EJD, Dkt. #68 (N.D. Cal. Sept. 23, 2021); *In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-3001-EJD, Dkt. #51 (N.D. Cal. Sept. 23, 2021); *In re Facebook Simulated Casino-Style Games Litig.*, No. 21-cv-2777-EJD, Dkt. #27 (N.D. Cal. Sept. 23, 2021). In other words, Plaintiffs' Counsel's adequacy is beyond cavil.

Consequently, Rule 23(a)'s adequacy requirement is met. *See Jama*, 2017 WL 4758722, at *6 (finding adequacy requirement met when "both the named plaintiffs and plaintiffs' counsel have demonstrated a commitment to vigorously prosecuting [the] action on behalf of the class").

---

[3]    To be more precise, two of the matters (*In re Apple* and *In re Google*) were formally consolidated as MDLs by the JPML; the third (*In re Facebook*) is a set of actions related and consolidated within the Northern District of California.

**B.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. As detailed below, both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

1.     <u>Common Questions of Law and Fact Predominate.</u>

Common questions predominate here. The Supreme Court has made clear that predominance is a qualitative inquiry: "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed.)). When considering whether common issues predominate, the court should begin with "the elements of the underlying cause of action." *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 553 (W.D. Wash. 2019) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2014)). "More important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). As these cases and the text of the rule make clear, individual questions need not be absent but merely must occupy less importance to the litigation than common questions.

The inquiry is straightforward in this case. The showings needed for Plaintiffs to prevail on the elements of their claims under the RMLGA and the CPA depend on evidence or legal argument that is common to the Class—principally the operation of Defendant's Applications. A factfinder's resolution of questions related to the operation of the Applications—for example, whether the chips sold in the Applications are "things of value"—will resolve questions central to the claims of every Class Member in one fell swoop, driving the litigation forward. *See*

1    *Reichert*, 331 F.R.D. at 554-55 (predominance satisfied when all or nearly all elements of the

2    class's prima facie case presented common questions); *Taylor v. Universal Auto Grp. I, Inc.*, No.

3    13-cv-5245-KLS, 2014 WL 6654270, at *16 (W.D. Wash. Nov. 24, 2014) (predominance

4    satisfied when "predominant" issue contested by the parties was common to the class). An

5    assessment of each Class Member's Lifetime Spending Amount will be accomplished by a

6    common and straightforward method: utilizing data provided to the court-appointed Settlement

7    Administrator by Defendant and the Platform Providers, to the extent reasonably available, to

8    calculate the sum of each Class Member's spending. *See Bess v. Ocwen Loan Servicing LLC*,

9    334 F.R.D. 432, 436 (W.D. Wash. 2020) ("[T]he need for individualized findings as to the

10   amount of damages does not defeat class certification."). These common questions predominate

11   any individualized question affecting particular Class Members regarding their ability to make a

12   prima facie showing of Defendant's liability or its potential affirmative defenses. And, in any

13   event, the Supreme Court has made clear that the existence of "affirmative defenses peculiar to

14   some individual class members" does not defeat predominance, even if those defenses must be

15   tried separately. *Tyson Foods*, 577 U.S. at 453. Predominance is therefore satisfied.

16              2.      A Class Action Is the Superior Method of Resolving the Controversy.

17           The superiority criterion includes four considerations: "(A) the class members' interests

18   in individually controlling the prosecution or defense of separate actions; (B) the extent and

19   nature of any litigation concerning the controversy already begun by or against class members;

20   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

21   forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The

22   first and second factors plainly point in favor of certification. "There is no indication that any

23   [Class Members has] an interest in pursuing their own claims—in fact, it would likely be

24   uneconomical for them to do so. There is also no evidence that certain [class members] have

25   already initiated their own individual actions." *Reichert*, 331 F.R.D. at 556. While some Class

26   Members have substantial alleged damages, it is difficult to imagine that a rational contingency-

27   fee lawyer would take on any individual claim given the time, effort, and resources that

Defendant has demonstrated it is willing to commit to defending claims against its Applications. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Moreover, the huge number of individuals in the Class would overwhelm the judicial system if Class Members were forced to litigate individually. *See Taylor*, 2014 WL 6654270, at *19.

Next, this forum is the clear choice in which to concentrate the litigation. The claims arise under Washington law and the Class is composed of individuals who played the Applications while in Washington. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 16-cv-1211-WBS-AC, 2019 WL 358517, at *6 (E.D. Cal. Jan. 29, 2019) ("The fact that all remaining claims are brought under California law weighs in favor of a California federal court adjudicating the dispute."). Moreover, the Court is intimately familiar with the facts and law underlying this action. It would make little sense to force the Parties to start over elsewhere. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D. Wash. 2008) (finding the forum superior because "the Court is already familiar with [p]laintiffs' claims"). Finally, the Court is distinctively familiar with the broader social casino litigation landscape to which this lawsuit belongs, given that the Court has approved substantially similar class action settlements and is overseeing ongoing litigation in two other related actions. *See generally* Dkt. #11.

Accordingly, a class action is the superior method for adjudicating the controversy between the Parties, and as all requirements of class certification under Rule 23 are met, the proposed Settlement Class should be certified.

## II.    The Proposed Settlement Merits Preliminary Approval.

After determining that the proposed Class should be certified, the Court must determine whether the Settlement warrants approval. This is a two-step process: "(1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Relente v. Viator, Inc.*, No. 12-cv-05868-JD, 2015 WL 2089178, at *2 (N.D. Cal. May 4, 2015); *see also* Fed. R. Civ. P. 23(e)(1)-(2); 4 Newberg on Class Actions § 13:10 (5th ed.).

At the preliminary approval stage, the Court determines merely whether the "proposed settlement [is] within the range of final approval" such that notice should be disseminated to the class. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016); *see also* 4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.). While the Ninth Circuit has a "strong judicial policy" favoring settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), before the Court preliminarily approves a class action settlement, it "has a responsibility to review a proposed class action settlement to determine whether the settlement is 'fundamentally fair, adequate, and reasonable,'" *Wilson v. Maxim Healthcare Servs., Inc.*, No. 14-cv-789-RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)); Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2), as amended in 2018, sets forth specific factors for courts to consider in determining whether a class settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.*[4] At the preliminary approval stage, this Court can conduct a "less searching" inquiry than at final approval, and "seek[] merely to identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink*, 2016 WL 4052588, at *4. Here, the proposed Settlement—which

---

[4] Notably, the factors to be considered under the amended Rule 23(e)(2) overlap with the factors previously articulated by the Ninth Circuit as hallmarks of a fair, reasonable, and adequate class action settlement. Indeed, when assessing proposed class settlements, courts in this Circuit continue to look to the "*Churchill* factors," which are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011); *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).

EDELSON PC
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

creates a $12,000,000 non-reversionary fund for Class Members, and which is comparable to

similar approved social casino settlements—satisfies the Rule 23(e)(2) factors.

**A.      The Class Representatives and Proposed Class Counsel Have Adequately Represented the Settlement Class.**

As discussed above, the Class Representatives and their Counsel are adequate. Plaintiffs

Ferrando and Marzano share the same interests as the Settlement Class, there is no evidence of

any conflicts of interest, and by stepping forward in this litigation they have demonstrated their

willingness to prosecute this case. Likewise, Proposed Class Counsel have extensive experience

litigating complex class actions—including substantially similar class actions against social

casino companies—and negotiated this Settlement with the best interests of the Class in mind.

Based on their unparallel experience litigating social casino cases, Proposed Class Counsel are

confident that the proposed Settlement is fair, reasonable, and adequate, and in the best interests

of the Class. *See* Logan Decl. ¶ 20. The "experience and views of counsel" thus support

approving the Settlement. *Churchill*, 361 F.3d at 576-77; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

948, 965 (9th Cir. 2009) ("[P]arties represented by competent counsel are better positioned than

courts to produce a settlement that fairly reflects each party's expected outcome in litigation.")

(citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ikuseghan v. Multicare*

*Health Sys.*, No. 14-cv-05539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016)

(considering that class counsel, "who are experienced and skilled in class action litigation,

support the [s]ettlement as fair, reasonable, and adequate, and in the best interests of the [c]lass

as a whole," and approving settlement).

**B.      The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.**

The Settlement also satisfies the second requirement under Rule 23(e)(2), since it is the

product of arm's-length negotiations facilitated by Phillips ADR, a nationally renowned

mediation firm. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of

1    an arms-length, non-collusive, negotiated resolution."); *Helde v. Knight Transportation, Inc.*, No.

2    12-cv-00904-RSL, Dkt. #191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval

3    where "Settlement Agreement resulted from extensive arm's-length negotiations, with

4    participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, No. 12-cv-0576-

5    RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

6           Furthermore, this Settlement presents none of the red flags the Ninth Circuit has flagged

7    as indicative of potential collusion—(1) "when counsel receive a disproportionate distribution of

8    the settlement, or when the class receives no monetary distribution but class counsel are amply

9    rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the

10    parties arrange for fees not awarded to revert to defendants rather than be added to the class

11    fund." *In re Bluetooth*, 654 F.3d at 947.

12           *First*, Proposed Class Counsel are not receiving a disproportionate distribution of the

13    Settlement Fund or being amply rewarded while the Class receives no monetary distribution. To

14    the contrary, Proposed Class Counsel have unilaterally limited themselves to a fee petition within

15    the "usual range" for fees in this Circuit—30% of the Settlement Fund. *See Vizcaino v. Microsoft

16    Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). And far from receiving coupons or *cy pres*-only

17    relief, Class Members will receive substantial individual cash recoveries.[5] *Second*, there is no

18    "clear sailing" provision in the Settlement. *See In re Bluetooth*, 654 F.3d at 947 (defining clear

19    sailing provisions). Defendant is free to object to Proposed Class Counsel's fee request should

20    Defendant determine the request is unreasonable. *See* Agreement § 8.1. *Third*, there is no

21    possibility that any funds revert to the Defendant. *See id.* §§ 1.35, 2.1(i).

22           Ultimately, there are no signs of collusion here because there was no collusion. This

23    Settlement is the product of serious, informed, non-collusive negotiations—and that fact

24

25    ─────────────────
      [5]      Aside from the Class Representatives' right to petition the Court for reasonable incentive awards, no Class
26    Member will be given preferential treatment at the expense of another. *See Scott v. United Servs. Auto. Ass'n*, No.
      11-cv-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally
27    granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of
      the class") (internal citations omitted).

1  militates in favor of preliminary approval.

2      **C.    The Settlement Treats Class Members Equitably.**

3      Fed. R. Civ. P. 23(e)(2)(D) requires courts to consider whether a proposed class

4  settlement "treats class members equitably relative to each other." Here, the Defendant has

5  agreed to create a $12,000,000 non-reversionary Settlement Fund, from which each Class

6  Member who submits a valid Claim Form will receive payment. The Plan of Allocation sets forth

7  a uniform, equitable system for determining the amount of each Settlement Class Member's

8  payment, based on a person's Lifetime Spending Amount and overall participation levels. *See*

9  Agreement §§ 1.36, 2.1(c); Exhibit E to the Agreement. Under the Plan of Allocation, those with

10  higher Lifetime Spending Amounts are eligible to recover a greater percentage of their spending,

11  which reflects the fact that those Class Members—had this case gone to trial—would have been

12  most likely to obtain a treble damages award under the CPA. *See* Exhibit E to the Agreement. In

13  the event that a Settlement Payment when initially calculated would exceed a Class Member's

14  Lifetime Spending Amount, any amount in excess of the Class Member's Lifetime Spending

15  Amount will be distributed *pro rata* to all Class Members whose Settlement Payment does not

16  exceed their Lifetime Spending Amount. *Id.* If all Class Members' Settlement Payments would

17  exceed their Lifetime Spending Amounts, then the remaining Settlement Fund shall be

18  distributed *pro rata*. For the avoidance of doubt, no Class Member will recover more than their

19  Lifetime Spending Amount unless *all* Class members do. *Id.*

20      The Settlement also provides for prospective relief that is identical for all Settlement

21  Class Members, and each Class Member will release the same claims against the Defendant.

22  Furthermore, the provision of incentive awards to Plaintiffs Ferrando and Marzano is consistent

23  with the equitable treatment of Class Members. The requested awards are modest relative to the

24  $12,000,000 Settlement Fund that the Class Representatives helped secure for the Settlement

25  Class, and the awards reflect the work the Representatives have done for the Settlement Class.

26      Because the Settlement treats each member of the Settlement Class equitably, this factor

27  is well satisfied.

1

**D.      The Relief Secured for the Settlement Class Is Adequate.**

2

The final requirement of Rule 23(e)(2) is the adequacy of the relief, taking into account (i)

3

the costs, risks, and delay of not settling, (ii) the efficacy of distributing relief and processing

4

claims, (iii) the proposed attorney's fee award, and (iv) any agreements made in connection with

5

the proposed settlement.

6

First, the "amount offered in settlement" here favors approval. *Churchill*, 361 F.3d at

7

575; Fed. R. Civ. P. 23(e)(2)(C). At approximately 25% of the Class' alleged damages, the

8

recovery achieved here is on par with the settlements reached in *Wilson v. Playtika*

9

(approximately 25%) and *Reed v. Scientific Games* (approximately 27%). *See* Logan Decl. ¶ 26.

10

These are indisputably "excellent" results in comparison to other cases of this magnitude. *See In*

11

*re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 521 (N.D. Cal. 2020).

12

And twelve million dollars is, no matter how sliced or diced, a significant recovery for this

13

Washington-only class. It is a significant enough sum that Class Members with the largest

14

Lifetime Spending Amounts stand likely to recover more than 60% of their Lifetime Spending

15

Amounts, and no participating Class Member is likely to recover less than 20%. *See* Logan Decl.

16

¶ 13; *compare with Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

17

688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to

18

only a fraction of the potential recovery will not per se render the settlement inadequate or

19

unfair"). Particularly in the current economic climate, these recoveries will be life-changing for

20

many Class Members. *See* Logan Decl. ¶ 21.

21

The prospective relief offered by the Settlement buttresses the fairness of the Settlement.

22

*See Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal.

23

Apr. 22, 2015) (noting "the significant value of the prospective relief also obtained in the

24

settlement agreement" warranted preliminary approval). The Settlement requires the Defendant

25

to establish and make publicly available a voluntary self-exclusion policy that will allow players

26

to exclude themselves from making further purchases, to link to that policy within the games and

27

the Defendant's website, and to maintain a webpage, accessible from within the Applications

1    that encourages responsible gameplay. *See* Agreement § 2.2. These changes, intended to

2    generally mirror the sorts of voluntary self-exclusion programs that states often require casinos

3    to implement, reflect a pioneering—and, in Plaintiffs' Counsel's view, long-overdue—

4    advancement in social casino self-regulation. And as relevant here, these changes to the

5    Defendant's conduct—in conjunction with the twelve-million-dollar cash fund—militate in favor

6    of approval. *See Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a

7    whole, rather than the individual component parts, that must be examined for overall fairness.").

8        The sub-factors enumerated in Rule 23(e)(2)(C) also support the adequacy of this

9    monetary and injunctive relief.

10        1.    The Cost, Risk, and Delay of Further Litigation, Compared to the
11              Settlement's Benefits, Favor Approval.

12        The relief offered by this Settlement is particularly strong in light of the costs, risks, and

13    delays inherent in further litigation of this case. While Plaintiffs are confident in the strength of

14    their claims and believe they would prevail at class certification and trial, litigating this case to

15    verdict would impose upon Class Members substantial risks that are unacceptable in light of the

16    immediate and certain cash recovery this Settlement makes available. *See Betorina v. Randstad*

17    *US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *7-8 (N.D. Cal. Apr. 6, 2017)

18    (analyzing the *Churchill* factors of the strength of plaintiff's case, the risk of further litigation,

19    and the risk of maintaining class action status).

20        The most significant of these risks, in Plaintiffs' Counsel's professional judgment, is that

21    the ISGA's lobbying efforts, ongoing since 2018 as described above, may eventually lead to a

22    retroactive change in the law. *See* Logan Decl. ¶ 22. Plaintiffs' Counsel have thus far fended off

23    the ISGA's lobbying efforts, but the ISGA and its members—many of them billion-dollar

24    gambling corporations—are formidable opponents. If this case does not settle now, during each

25    legislative cycle the Class will be at risk of having its claims eviscerated in the name of

26    "remov[ing] . . . economic uncertainty" by "clarifying" that proposed Class Members cannot

27    recover under the RMLGA. *See, e.g.*, H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020). And in

1    addition to lobbying-related risks, it is also of course possible—as with any litigation—that the

2    Defendant could prevail on any number of future motions at subsequent litigation stages,

3    including, for example, a motion contending that California law (and not Washington law)

4    governs the Class' claims due to a choice of law provision in Defendant's Terms of Service.

5         Even assuming Plaintiffs' Counsel could fend off the ISGA and Defendant's litigation

6    efforts long enough for Plaintiffs to try this case to verdict, the Defendant's inevitable appeals

7    would take years, further delaying the relief to the Class. *See* Logan Decl. ¶ 23; *Rodriguez*, 563

8    F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class

9    members, for years. This factor, too, favors the settlement."); *Ikuseghan*, 2016 WL 3976569, at

10   *4 ("[T]he outcome of trial and any appeals are inherently uncertain and involve

11   significant delay. The [s]ettlement avoids these challenges."). The substantial expense and

12   burden associated with litigating this case not only through trials but also through inevitable

13   appeals further militate in favor of granting preliminary approval now. *See* Logan Decl. ¶ 23;

14   *Rinky Dink*, 2016 WL 4052588, at *5 (finding preliminary approval appropriate when

15   considering the expense of the "additional depositions, expert work, and motion work [that]

16   would have to be completed before trial").

17        Moreover, through years of litigation in parallel lawsuits as well as a painstaking

18   negotiation and mediation process here, the Parties and their counsel "had enough information to

19   make an informed decision about the strength of their cases and the wisdom of settlement." *Id.* at

20   *5. For example, leading up to the mediation, Defendant produced a large volume of documents

21   through an informal discovery process leading into the mediation (including information

22   necessary to determine the Class' alleged damages), the Parties exchanged written opening and

23   response briefs, and spoke frequently by telephone to clarify the relevant facts and hone the

24   parties' negotiation positions. *See* Logan Decl. ¶ 9. And then, of course, the Parties engaged in a

25   full-day mediation facilitated by the skilled Phillips ADR team, in which all information

26   necessary to make an informed settlement decision was fleshed out at length. *Id.* ¶ 10.

27   Consequently, the Parties negotiated the Settlement with a clear understanding of the strengths

and weaknesses of their respective claims and defenses. *See id.*; *Ikuseghan*, 2016 WL 3976569,
at *3 (approving settlement reached "between experienced attorneys who are familiar . . . with
the legal and factual issues of this case in particular").

In sum, the relief offered by the Settlement, with the risks and expenses of continued
litigation taken into consideration, weighs strongly in favor of preliminary approval. Fed. R. Civ.
P. 23(e)(2)(C)(i); *Rinky Dink*, 2016 WL 4052588, at *5 (finding first three *Churchill* factors
supported preliminary approval when plaintiffs were confident in their case but continuing to
litigate risked losing class certification and was "inherently expensive"); *Ikuseghan*, 2016 WL
3976569, at *4 ("Absent the proposed [s]ettlement, [c]lass [m]embers would likely not obtain
relief, if any, for a period of years.").

2.    The Method of Processing Claims and Distributing Relief to the
Settlement Class Members is Effective and Supports Preliminary
Approval.

The next sub-factor evaluates whether the Settlement's proposed method of distributing
relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method
"get[s] as much of the available damages remedy to class members as possible and in as simple
and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4
Newberg on Class Actions § 13:53 (5th ed.).

The proposed Settlement here satisfies this factor by relying on well-established,
effective methods for processing Class Members' Claim Forms and distributing the proceeds of
the Settlement. The Settlement proposes appointing JND Legal Administration, a well-respected
class action settlement administrator, to oversee an effective claims process and distribution of
relief. *See* Agreement §§ 1.32, 5; *see also Linehan v. AllianceOne Receivables Mgmt., Inc.*, No.
15-cv-1012-JCC, 2017 WL 3724819, at *2 (W.D. Wash. June 1, 2017) (appointing JND Legal
Administration). As described above, Settlement Class Members will be able to file claims to
recover a cash payment from the Settlement Fund. *See* Agreement § 1.35. Each person in the

1    Settlement Class will be sent a Claim Form via email and/or U.S. Mail and will have the option

2    to file a claim through the Settlement Website or by mail. *Id.* § 4.2(a). The Claim Form allows

3    Class Members to select to receive their Settlement Payment by check, Zelle, PayPal, or ACH

4    Direct Deposit. *See id.*, Exhibit A. The Settlement Administrator will provide Class Members

5    with resources (including a website, a mailing address, and a toll-free phone number) to contact

6    the Settlement Administrator or Class Counsel directly. *See id.*, Exhibit D. The Settlement

7    Administrator will also calculate payments according to the Plan of Allocation and then disburse

8    to Class Members their share of the Settlement Fund upon approval of the Court. *Id.* § 2.1.

9         In sum, JND Legal Administration is well-equipped to process Class Member claims and

10   distribute relief in an effective manner, ensuring that the relief described in the Settlement

11   Agreement will reach Class Members.

12              3.    The Terms of the Requested Attorneys' Fees are Reasonable.

13        The third and final[6] relevant sub-factor considers the adequacy of relief, taking into

14   account "the terms of any proposed award of attorney's fees, including timing of payment." Fed.

15   R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, Proposed Class Counsel

16   plan to petition the Court for an award of reasonable attorneys' fees and costs after the

17   Settlement Class has received notice of the Settlement. The Settlement's contemplated method of

18   calculating attorneys' fees (*i.e.*, the percentage-of-the-fund method) and its limit on attorneys'

19   fees (*i.e.*, no more than 30% of the non-reversionary Settlement Fund) are reasonable and

20   predicated on the outstanding relief provided to the Settlement Class. *See* Agreement § 8.1. The

21   percentage-of-the-fund method has been used to determine reasonable fee awards in similar

22   social casino class settlements approved by this Court, and an award of up to 30% would be fair

23   and reasonable for this case. *See, e.g.*, *Kater*, 2021 WL 511203, at *1 (noting that "[c]ontingency

24   arrangements in high-stakes, high-value mass litigation typically fall in the range of 30-40%"

25

26   [6]    The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is inapplicable here since the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. Logan Decl. ¶ 24. Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

27

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

1    and approving a 25% fee award); *Huuuge*, 2021 WL 512229, at *1 (same); *Playtika*, 2021 WL

2    512230, at *1 (same); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed.) (noting that,

3    generally, "50% of the fund is the upper limit on a reasonable fee award from any common

4    fund"). Accordingly, that the Settlement permits Proposed Class Counsel to seek an award of up

5    to 30% of the fund in attorneys' fees and costs is abundantly appropriate.[7] Finally, if approved,

6    the Settlement provides that attorneys' fees will be paid within fourteen (14) business days after

7    final judgment. Agreement § 8.2. These terms are reasonable and should be preliminarily

8    approved.

9                                              ***

10    Because the proposed Settlement Agreement is "fair, reasonable, and adequate" based on

11    all the factors in Rule 23(e)(2) and is well within the range of possible approval, the Court should

12    grant preliminary approval.

13    **III.    The Court Should Approve the Proposed Notice Plan.**

14    Upon certification, Due Process and Rule 23 require the Court to "direct to class

15    members the best notice that is practicable under the circumstances, including individual notice

16    to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

17    Here, the Parties have agreed upon a multi-part Notice Plan to be carried out by JND

18    Legal Administration, a well-respected class action settlement administrator. *See, e.g.*, *Scientific*

19    *Games*, Dkt. #166 (granting preliminary approval and appointing JND Legal Administration as

20    settlement administrator); *Linehan*, 2017 WL 3724819, at *2 (same). The Defendant has agreed

21    to provide the Settlement Administrator and Proposed Class Counsel with all Settlement Class

22    Members' contact information reasonably available to the Defendant, including names, phone

23    numbers, email addresses, and mailing addresses. *See* Agreement § 4.1(a). For each Player ID

24    with a Lifetime Spending Amount greater than zero, the Defendant will also provide the Player

25    ID's Lifetime Spending Amount, if known and to the extent it is reasonably available. *Id.*

26

27    ---
[7]    To be clear, the Defendant may oppose the amount of attorneys' fees requested by Proposed Class Counsel as there is no "clear-sailing" provision in the Agreement. *See* Agreement § 8.1.

1   Proposed Class Counsel and Defendant's Counsel have agreed to cooperate, and are in the

2   process of cooperating to work with the Platform Providers to obtain and furnish to the

3   Settlement Administrator the Lifetime Spending Amounts of all contact information in the

4   Platform Providers' possession—including names, usernames/Platform IDs, phone numbers,

5   email addresses, and mailing addresses—for all persons in the Settlement Class with a Lifetime

6   Spending Amount greater than zero. *Id.* § 4.1(c)-(d).

7       All of this information will be used by the Settlement Administrator to create the Class

8   List. *Id.* § 4.1(f). Within thirty-five (35) days of the entry of preliminary approval, the Settlement

9   Administrator will use the Class List to send notice via email substantially in the form attached

10  to the Agreement as Exhibit B, along with an electronic link to the Claim Form, to all Settlement

11  Class Members for whom a valid email address is available on the Class List. *See id.* § 4.2(a). In

12  the event transmission of the email notice results in any "bounce-backs," the Settlement

13  Administrator will, where reasonable, correct any issues that may have caused the "bounce-

14  back" to occur and make a second attempt to re-send the email notice, and will, where possible,

15  send notice substantially in the form attached to the Agreement as Exhibit C via First Class U.S.

16  Mail. *See id.* The Settlement Administrator will also, where possible, send notice substantially in

17  the form attached as Exhibit C via First Class U.S. Mail to all Settlement Class Members with a

18  Lifetime Spending Amount greater than $100.00. *See id.* Class Counsel anticipate that thousands

19  of Player IDs associated with Class Members will receive direct notice. *See* Logan Decl. ¶ 25.

20      Within seven (7) days of the entry of preliminary approval, the Settlement Administrator

21  will also establish a Settlement Website at www.zyngasettlement.com, which will activate the

22  ability to file Claim Forms online. *See* Agreement § 4.2(d). The notice provided on the

23  Settlement Website will be substantially in the form of Exhibit D to the Agreement, and the

24  website will advise the Settlement Class of the total value of the Settlement Fund and provide

25  Settlement Class Members with the ability to approximate their Settlement Payment. *Id.*

26      Finally, the Settlement Administrator will supplement the direct notice program with a

27  digital publication notice program that is estimated to deliver more than ten million (10,000,000)

1   impressions. *Id.* § 4.2(e). The digital publication notice campaign will be targeted, to the extent

2   reasonably possible, to the state of Washington, will run for at least one month, and will contain

3   active hyperlinks to the Settlement Website. *See id.*

4          In addition to reaching the Settlement Class, notice is adequate when it provides the

5   information necessary to make a decision in language that can be readily understood by the

6   average class member. Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11:53

7   (4th ed. 2002). That is the case here, where the format and language of each form of notice have

8   been carefully drafted in straightforward, easy-to-read language, and all information required

9   under Rule 23 is present. *See* Exhibits B–D to the Agreement.

10         Because the proposed methods for providing notice to the Class comport with both Rule

11  23 and Due Process, the Notice Plan should be approved by the Court.

12                                    **CONCLUSION**

13         For the foregoing reasons, Plaintiffs respectfully request that the Court (i) certify the

14  proposed Settlement Class; (ii) grant preliminary approval of the Settlement; (iii) appoint Tonda

15  Ferrando and Dex Marzano as Class Representatives; (iv) appoint Jay Edelson, Rafey S.

16  Balabanian, Todd Logan, Alexander G. Tievsky, Brandt Silver-Korn, and Amy B. Hausmann as

17  Class Counsel; (v) approve the proposed Notice Plan; and (vi) schedule the final approval

18  hearing.

19

20         DATED this 27th day of June, 2022.

21                                           Respectfully Submitted,

22                                           **TONDA FERRANDO** and **DEX MARZANO**,
23                                           individually and on behalf of all others similarly
                                             situated,
24
25                                           By:  /s/ Todd Logan
                                             Rafey S. Balabanian*
26                                           rbalabanian@edelson.com
                                             Todd Logan*
27                                           tlogan@edelson.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Brandt Silver-Korn*
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300/Fax: 415.373.9435

By: /s/ Alexander G. Tievsky
Jay Edelson*
jedelson@edelson.com
Alexander G. Tievsky, WSBA #57125
atievsky@edelson.com
Amy B. Hausmann*
abhausmann@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370/ Fax: 312.589.6378

By: /s/ Cecily C. Jordan
Cecily C. Jordan, WSBA #50061
cjordan@tousley.com
TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Tel: 206.682.5600

*Plaintiffs' Attorneys and Proposed Class Counsel*

*Admitted pro hac vice*